IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROXANNE TORRES,

    Plaintiff,

v.                                            1:16-cv-01163-LF-KK

JANICE MADRID et al.,

    Defendants.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on defendants Janice Madrid and Richard Williamson's Amended Motion for Summary Judgment on the Basis of Qualified Immunity and Other Grounds. Doc. 65. Plaintiff Roxanne Torres opposes the motion. Doc. 76. For the following reasons, the Court GRANTS defendants' motion.

**I.**     **Undisputed Material Facts**

On Tuesday morning, July 15, 2014, New Mexico State Police officers went to an apartment complex in Albuquerque to serve an arrest warrant on a person named Kayenta Jackson. The officers believed Ms. Jackson was a resident of apartment number 22. The arrest warrant for Ms. Jackson was for white collar crimes, but she also was suspected of having been involved in drug trafficking, murder, and other violent crimes. Defendants Janice Madrid and Richard Williamson were two of the police officers involved.

Officer Madrid and Officer Williamson parked their unmarked patrol vehicle near a 2010 black and white Toyota FJ Cruiser. Plaintiff Roxanne Torres was in the Toyota FJ Cruiser with her motor running. She had backed into her parking spot, and there were cars on either side of her. Officers Madrid and Williamson were wearing tactical vests and dark clothing. Their clothing

clearly identified them as police officers, but Ms. Torres testified that she is unable to read and write because of a learning disability.

Officers Madrid and Williamson attempted to open the locked door of the Toyota FJ Cruiser in which Ms. Torres was sitting. Ms. Torres saw one person standing at her driver's side window, and another at the front tire of her car. Although the officers repeatedly shouted, "Open the door!," Ms. Torres claimed she could not hear them because her windows were rolled up. Ms. Torres thought she was the victim of an attempted car-jacking, so she drove forward. Both officers testified that they believed Ms. Torres was going to hit them with her car, and that they were in fear for their lives. Ms. Torres claims that neither officer was in harm's way. Both officers fired their duty weapons at Ms. Torres. Ms. Torres did not stop.

Instead, Ms. Torres continued to drive forward, over a curb and landscaping, and she then left the area. She drove to a commercial area, lost control of her car, and stole a different car that had been left running in a parking lot. She then drove to Grants, New Mexico. Ms. Torres first noticed that she had been shot when she got to Grants, and she went to the hospital for treatment. She stayed in the hospital one day.

The following day, on July 16, 2014, Ms. Torres was charged by criminal complaint with two counts of aggravated assault with a deadly weapon upon a peace officer, and one count of the unlawful taking of a motor vehicle. Doc. 65-5. She was taken into custody the same day. Doc. 65-6 at 3. She was indicted on these charges two weeks later, on July 30, 2014. Doc. 65-6. Count 1 of the indictment identified Officer Williamson as the victim, and count 2 of the indictment identified Officer Madrid as the victim. *Id.* On March 31, 2015, Ms. Torres pled no contest to aggravated fleeing from a law enforcement officer, in violation of N.M. STAT. ANN. § 30-22-1.1, a lesser included offense of count 1 of the indictment. Doc. 65-7 at 1. She also pled no contest to

assault upon a peace officer, in violation of N.M. STAT. ANN. § 30-22-21, a lesser included offense of count 2 of the indictment. *Id.* In addition, she pled no contest to count 3 of the indictment, which was the unlawful taking of a vehicle charge. *Id.*

## II. The Complaint

In counts I and III of her complaint, Ms. Torres alleges that Officer Madrid and Officer Williamson, respectively, through the intentional discharge of their weapons, "exceeded the degree of force which a reasonable, prudent law enforcement officer would have applied under these same circumstances." Doc. 1 ¶¶ 14, 21. In counts II and IV,[1] Ms. Torres alleges that Officers Madrid and Williamson conspired together to use excessive force against her. *Id.* ¶¶ 17, 24. In other words, all of Ms. Torres's claims are excessive force claims under the Fourth Amendment.

## III. Discussion

The defendants argue that they are entitled to qualified immunity on all of Ms. Torres's excessive force claims not only because the officers' use of deadly force was reasonable under the circumstances, but also because Ms. Torres's claims are barred under the *Heck*[2] doctrine. Doc. 65 at 9–18. They further contend that her excessive force claims fail because she was never seized, and without a seizure, there can be no Fourth Amendment excessive force claim. Doc. 82 at 10–11. Because I agree that the undisputed material facts show that Ms. Torres was never seized, she

---

[1] The complaint mistakenly identifies count IV as count II. Doc. 1 at 5.

[2] In *Heck v. Humphrey*, the Supreme Court held that a plaintiff cannot bring a § 1983 civil rights claim based on actions whose unlawfulness would render an existing criminal conviction invalid. 512 U.S. 477, 486–87 (1994). If, on the other hand, a court determines that a plaintiff's civil rights claim, even if successful, would not necessarily demonstrate the invalidity of a criminal conviction, the action may proceed absent some other bar to the suit. *Id.* at 487.

cannot prevail on her claims that the officers' used excessive force in effecting a seizure. I therefore grant defendants' motion.

### A. Legal Standard for Summary Judgment Motions

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant bears the initial burden of establishing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "[T]he movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)). If this burden is met, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Celotex*, 477 U.S. at 324. The non-moving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988). Rather, the non-movant has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

At the summary judgment stage, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court's function "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* Summary judgment may be granted where "the evidence is merely colorable, or is not significantly probative." *Id.* at 249–50 (internal citations omitted).

### B. Section 1983 Claims and Qualified Immunity Generally

Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove that a defendant acted under color of state law to deprive the plaintiff of a right, privilege, or immunity secured by the Constitution or the laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would be aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Under the Tenth Circuit's two-part test for evaluating qualified immunity, the plaintiff must show (1) that the defendant's conduct violated a constitutional or statutory right, and (2) that the law governing the conduct was clearly established when the alleged violation occurred. *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998); *accord Tonkovich v.*

6

*Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Unless both prongs are satisfied, the defendant will not be required to "engage in expensive and time consuming preparation to defend the suit on its merits." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

### C. Section 1983 Excessive Force Claims

Claims of excessive force under § 1983 fall within the Fourth Amendment. *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008) (An excessive force claim is treated as a seizure subject to the Fourth Amendment's reasonableness requirement.). The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV. "The Fourth Amendment covers only 'searches and seizures.'" *City of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998). Ms. Torres makes no allegation that APD officers searched her. Thus, the issue in this case is whether APD officers seized Ms. Torres within the meaning of the Fourth Amendment.

To prove an excessive force claim under the Fourth Amendment, Ms. Torres must prove that the force used to effect a seizure was objectively unreasonable under the totality of the circumstances. *Estate of Larsen*, 511 F.3d at 1259. To prevail, Ms. Torres first "must show . . . that a 'seizure' occurred . . . .'" *Childress v. City of Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000). A seizure requires the "intentional acquisition of physical control" of the person being seized. *Id.* "[W]ithout a seizure, there can be no claim for excessive use of force." *Jones v. Norton*, 809 F.3d 564, 575 (10th Cir. 2015).

7

The Tenth Circuit's decision in *Farrell v. Montoya*, 878 F.3d 933 (10th Cir. 2017) controls the outcome of this case. In that case, Ms. Farrell was driving a minivan with her five children inside when a New Mexico state police officer pulled her over for speeding near Taos, New Mexico. *Id.* at 934. The officer explained to Ms. Farrell that she could either pay a fine or go to court within 30 days, but that she needed to decide which route she wanted to take. *Id.* at 935. Ms. Farrell refused to make a decision, and as the officer walked back to his car to inform the dispatcher what was happening, Ms. Farrell drove away. *Id.* The officer followed Ms. Farrell with his sirens on, and Ms. Farrell once again pulled over. *Id.* The officer went to the minivan, opened the door, and ordered Ms. Farrell to get out. *Id.* The children started screaming, and a child got out of the minivan. *Id.* The officer drew his Taser and pointed it at the child. *Id.* Ms. Farrell thought the Taser was a gun. *Id.* The child got back in the minivan, but Ms. Farrell refused to comply with the officer's order to get out of the van because she was worried that the officer would not be peaceful. *Id.* The officer called for backup and continued to try to get Ms. Farrell to comply with his orders. *Id.* At one point, Ms. Farrell got out of the minivan to speak to the officer, but she again got back in, and again refused to comply with the officer's commands. *Id.* As two other officers responded to the scene, the situation became more chaotic. *See id.* at 935–36. The original officer pointed his Taser inside the van and at one of the children, and eventually pulled out his baton and yelled, "Get them out!" *Id.* A second officer drew his gun and shouted, "Open the fucking door!" *Id.* The third officer also drew his gun, and the officer with the baton smashed the rear passenger window as the officers attempted to get the Farrells to comply with their commands. *Id.* at 936.

Eventually, Ms. Farrell again drove away, and one of the officers fired three shots toward the minivan. *Id.* No bullet hit either the minivan or its occupants; the officer testified that he was aiming at the left rear tire. *Id.* The van neither slowed nor stopped, and each of the three officers

8

returned to their cars and chased the minivan at high speeds. *Id.* The Farrells claimed that they called 911 during the chase and tried to find a police station to pull into because they were afraid that the three officers chasing them would harm or kill them. *Id.* After about five minutes, the Farrells drove into a hotel parking lot and surrendered. *Id.*

The Farrells filed suit and claimed that the officer who fired shots at the minivan violated their Fourth Amendment rights by using excessive force against them. *Id.* The Tenth Circuit held that because the shots did not result in a seizure, there could be no excessive force claim. *Id.* at 937. The court explained:

> In short, when [the officer] fired at the van, the Farrells were fleeing. Though they had been seized moments before, that seizure ended when they no longer submitted to the officers' authority. And [the officer]'s shots themselves did not effect a seizure because the van continued its departure. The Farrells' alleged intent to submit when they could reach a police station was irrelevant because their conduct—the flight from the officers—did not manifest submission. As there was no seizure, there could be no unreasonable seizure, even if [the officer] was using deadly force. The Farrells' claims against [the officer] fail for lack of any violation of the Fourth Amendment.

*Id.* at 939. The court held that the officer was entitled to summary judgment in his favor on the Farrells' excessive force claims. *Id.*

Here, there is no dispute that Ms. Torres did not stop when the officers fired their guns at her. In fact, she never stopped in response to police action. She drove to Grants—approximately 75 miles from Albuquerque—before she stopped. And she stopped then only because she noticed that she had been shot and needed medical treatment. Because the officers did not stop Ms. Torres by shooting at her, there was no seizure, and she cannot prevail on her claims of excessive force. Because there was no seizure, there was no violation of Ms. Torres' Fourth Amendment rights. Defendants are entitled to summary judgment in their favor on all four of Ms. Torres' excessive force claims against them.

9

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' Amended Motion for Summary Judgment on the Basis of Qualified Immunity and Other Grounds (Doc. 65). The Court dismisses this case with prejudice.

IT IS SO ORDERED.

_____
Laura Fashing
United States Magistrate Judge