IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROXANNE TORRES,

Plaintiff,

v.                                                    1:16-cv-01163-LF-KK

JANICE MADRID et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on defendants Janice Madrid and Richard Williamson's Renewed Motion for Summary Judgment on the Basis of Qualified Immunity and Other Grounds. Doc. 112. Plaintiff Roxanne Torres opposes the motion. Doc. 122. In addition to the motion and response, the Court also considered the defendants' reply and the parties' submissions of supplemental authority. Docs. 123, 125–130. For the following reasons, the Court GRANTS defendants' motion.

I.      **Facts**[1]

On Tuesday morning, July 15, 2014, at about 6:30 am, New Mexico State Police officers went to an apartment complex in Albuquerque to serve an arrest warrant on a person named Kayenta Jackson. *See* Doc. 1 ¶ 5; Doc. 112-8 (Exh. H, 0:00–0:15). The officers believed Ms. Jackson was a resident of apartment number 22. *See* Doc. 1 ¶ 5. The arrest warrant for Ms.

---

[1] Ms. Torres purportedly disputes almost all of the facts the defendants rely on in their motion, but many of the "disputes" are actually additional facts that Ms. Torres presumably believes are important or relevant. *See* Doc. 122 at 1–10. For the purposes of this order, the Court recounts only the most basic facts over which there is no arguable dispute. The Undisputed Material Facts (UMFs) are recounted in Document 112 at pages 2 through 5. The Court cites to supporting evidence as necessary, but it does not cite to all the evidence that supports every fact.

Jackson was for felony white collar crimes. *See* UMF 10. Defendants Janice Madrid and Richard Williamson were two of the police officers involved. *See* UMF 13.

Officer Madrid and Officer Williamson parked their unmarked patrol vehicle near a 2010 black and white Toyota FJ Cruiser. *See* Doc. 1 ¶ 6. Plaintiff Roxanne Torres was in the Toyota FJ Cruiser with her motor running. *See* UMF 8. She had backed into a parking spot in front of apartment 22, and there were cars on either side of her. *See* UMF 7; Doc. 122-2 at 13 (diagram); Doc. 122-4 at 26 (diagram). Officers Madrid and Williamson were wearing tactical vests and dark clothing, or "BDUs" (battle dress uniforms). *See* Doc. 1 ¶ 7; Doc. 112-4 at 6. Their clothing clearly identified them as police officers. Docs. 112-4 at 8–13 (photos of Officers Madrid and Williamson in the clothes they were wearing that morning).

Both officers approached, and Officer Williamson attempted to open the locked door of the Toyota FJ Cruiser in which Ms. Torres was sitting. Doc. 122-4 at 6; *see also* Doc. 122-3 at 7–8. Ms. Torres saw one person standing at her driver's side window, and another at the front tire of her car, on the driver's side. *See* Doc. 122-3 at 10 (Ms. Torres's description at her deposition), 18 (diagram based on description). Although the officers repeatedly shouted, "Open the door!," *see* Doc. 112-8 (Exh. H, 1:12–1:18 (Officer Madrid's audio recording of incident); Exh. I, 1:01–1:12 (Officer Williamson's audio recording of incident)), Ms. Torres claimed she could not hear them because her windows were rolled up, Doc. 122-3 at 11. The officers never orally identified themselves as police officers. *See* Doc. 112-8 (Exh. H, 1:12–1:18; Exh. I, 1:01–1:12). Ms. Torres testified that she thought she was the victim of an attempted carjacking, so she drove forward. Doc. 122-3 at 7–9. Both officers testified that they believed Ms. Torres was going to hit them with her car, and that they were in fear for their lives. Doc. 112-2 at 7; Doc. 112-4 at 4, 7. Ms. Torres claims that neither officer was in harm's way during the incident. Doc.

122 at 12 (citing to testimony by Officer Jeff Smith that "some" of the shots fired were fired after Ms. Torres's vehicle passed by Officers Madrid and Williamson, and that once the vehicle had passed them, the officers were not in any danger of being hit, Doc. 122-2 at 80).  Both officers fired their duty weapons at Ms. Torres.  Doc. 1 ¶ 10.  Ms. Torres did not stop.  *See* UMF 26, 27. The entire incident—from the time Officers Madrid and Williamson attempted to open Ms. Torres's door until Ms. Torres drove away and was shot—lasted about twenty seconds.  *See* Doc. 112-8 (Exh. H, 1:12–1:30 (Officer Madrid's audio recording of incident); Exh. I, 1:01–1:22 (Officer Williamson's audio recording of incident)).

Ms. Torres drove forward, over a curb and landscaping, and left the area.  Doc. 112-1 at 6.  She drove to a commercial area, lost control of her car, and stole a different car that had been left running in a parking lot.  Doc. 112-1 at 6–7, 9.  She then drove to Grants, New Mexico. Doc. 112-1 at 9.  In Grants, she went to the hospital for treatment, Doc. 112-1 at 10, and she subsequently was transferred to the University of New Mexico Hospital (UNMH), *see* Doc. 122-6 (UNMH medical records).  She stayed in the hospital one day.  *See* Doc. 122-6.  Ms. Torres had been shot twice in the back.  Doc. 122-6 at 2 (medical record); Docs. 122-7, 122-8 (photos of injuries).

On July 16, 2014, Ms. Torres was charged by criminal complaint with two counts of aggravated assault with a deadly weapon upon a peace officer, and one count of the unlawful taking of a motor vehicle.  Doc. 112-5.  She was taken into custody the same day.  Doc. 112-6 at 3.  She was indicted on these charges two weeks later, on July 30, 2014.  Doc. 112-6.  Count 1 of the indictment identified Officer Williamson as the victim, and count 2 of the indictment identified Officer Madrid as the victim.  *Id.* at 1.  On March 31, 2015, Ms. Torres pled no contest to aggravated fleeing from a law enforcement officer, in violation of N.M. STAT. ANN. § 30-22-

1.1, a lesser included offense of count 1 of the indictment.  Doc. 112-7 at 1.  She also pled no contest to assault upon a peace officer, in violation of N.M. STAT. ANN. § 30-22-21, a lesser included offense of count 2 of the indictment.  *Id*.  In addition, she pled no contest to count 3 of the indictment, which was the unlawful taking of a vehicle charge.  *Id*.

## II.   **The Complaint**

In counts I and III of her complaint, Ms. Torres alleges that Officer Madrid and Officer Williamson, respectively, through the intentional discharge of their weapons, "exceeded the degree of force which a reasonable, prudent law enforcement officer would have applied under these same circumstances."  Doc. 1 ¶¶ 14, 21.  In counts II and IV,[2] Ms. Torres alleges that Officers Madrid and Williamson conspired together to use excessive force against her.  *Id.* ¶¶ 17, 24.  In other words, all of Ms. Torres's claims are excessive force claims under the Fourth Amendment.

## III.   **Discussion**

The defendants argue that they are entitled to qualified immunity on all of Ms. Torres's excessive force claims not only because their use of deadly force was reasonable under the circumstances, but also because the contours of plaintiff's claims were not clearly established when the incident occurred.  Doc. 112 at 10–24.  They also argue that Ms. Torres's claims are barred under the *Heck*[3] doctrine.  *Id.* at 24–27.  I agree with defendants that the contours of

---

[2] The complaint mistakenly identifies count IV as count II.  Doc. 1 at 5.

[3] In *Heck v. Humphrey*, the Supreme Court held that a plaintiff cannot bring a § 1983 civil rights claim based on actions whose unlawfulness would render an existing criminal conviction invalid. 512 U.S. 477, 486–87 (1994).  If, on the other hand, a court determines that a plaintiff's civil rights claim, even if successful, would not necessarily demonstrate the invalidity of a criminal conviction, the action may proceed absent some other bar to the suit.  *Id.* at 487.

plaintiff's claims were not clearly established on July 16, 2014, and also that her claims are barred under the *Heck* doctrine.[4]   I therefore grant defendants' motion for summary judgment.

### A.  Legal Standard for Summary Judgment Motions

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant bears the initial burden of establishing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  "[T]he movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).  If this burden is met, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Celotex*, 477 U.S. at 324.  The non-moving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment.  *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988).  Rather, the non-movant has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order

---

[4] Because either basis is sufficient for the grant of summary judgment, I do not address whether the officers' use of force was reasonable under the circumstances.

to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

At the summary judgment stage, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court's function "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* Summary judgment may be granted where "the evidence is merely colorable, or is not significantly probative." *Id.* at 249–50 (internal citations omitted).

## B. Section 1983 Claims and Qualified Immunity

Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove that a defendant acted under color of state law to deprive the plaintiff of a right, privilege, or immunity secured by the Constitution or the laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would be aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Under the Tenth Circuit's two-part test for evaluating qualified immunity, the plaintiff must show (1) that the defendant's conduct violated a constitutional or statutory

right, and (2) that the law governing the conduct was clearly established when the alleged

violation occurred.  *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998); *accord*

*Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998).  For a right to be clearly

established, "[t]he contours of the right must be sufficiently clear that a reasonable official would

understand that what he [or she] is doing violates that right."  *Anderson v. Creighton*, 483 U.S.

635, 640 (1987).  Unless both prongs are satisfied, the defendant will not be required to "engage

in expensive and time[-]consuming preparation to defend the suit on its merits."  *Siegert v.*

*Gilley*, 500 U.S. 226, 232 (1991).

To prove an excessive force claim under the Fourth Amendment, Ms. Torres must prove

that the force used to effect a seizure was objectively unreasonable under the totality of the

circumstances.  *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008).

The "'reasonableness' of a particular use of force must be judged from the perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.* (quoting

*Graham v. Connor*, 490 U.S. 386, 396 (1989)).  An officer may use deadly force if a reasonable

officer under similar circumstances would have had probable cause to believe that there was a

threat of serious physical harm to the officer or someone else.  *Id.* at 1260.

Ms. Torres also "must show . . . that a 'seizure' occurred . . . .'"  *Childress v. City of*

*Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000).  "[W]ithout a seizure, there can be no claim for

excessive use of force."  *Jones v. Norton*, 809 F.3d 564, 575 (10th Cir. 2015).  Until the Supreme

Court held otherwise in this case, the Tenth Circuit had held that any seizure—whether by force

or a show of authority—requires the "intentional acquisition of physical control" of the person

being seized.  *Childress*, 210 F.3d at 1156.  However, the Supreme Court in this case

distinguished between seizures by force and seizures by control, and held that "[a] seizure [by

force] requires the use of force *with intent to restrain*." *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021) (emphasis in original). The test is "whether the challenged conduct *objectively* manifests an intent to restrain." *Id.* (emphasis in original). Because the officers in this case shot at Torres and "objectively manifested an intent to restrain her from driving away," "the officers seized Torres for the instant that the bullets struck her." *Id.* at 999.

The Supreme Court acknowledged, however, that its distinction between seizures by force and seizures by control, and its clarification that each type of seizure is governed by a separate rule, has not always been clear. *Id.* at 1001. As Justice Gorsuch pointed out in dissent, this unclear distinction led to a circuit split, and the Supreme Court took this case to "sort out the confusion." *Id.* at 1005. Indeed, before the Supreme Court granted certiorari in this case, the Tenth Circuit affirmed this Court's grant of summary judgment based on its earlier holding in *Brooks v. Gaenzle*, 614 F.3d 1213, 1224 (10th Cir. 2010), stating that "an officer's intentional shooting of a suspect does not effect a seizure unless the 'gunshot . . . terminate[s] [the suspect's] movement or otherwise cause[s] the government to have physical control over him.'" *Torres v. Madrid*, 769 F. App'x 654, 657 (10th Cir. 2019) (unpublished) (quoting *Gaenzle*, 614 F.3d at 1224). The Tenth Circuit concluded that "[w]ithout a seizure, Torres's excessive-force claims (and the derivative conspiracy claims) fail as a matter of law." *Id.*

If qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *City of Tahlequah, Oklahoma v. Bond*. 142 S. Ct. 9, 11 (2021) (internal quotation marks omitted), it must protect the officers in this case. A Tenth Circuit panel and three justices of the United States Supreme Court believed that no constitutional violation occurred in this case. Although a majority of the Supreme Court held otherwise, the contours of the Supreme Court's holding in 2021 was not clear to a reasonable officer in 2014, when the

events in this case took place. *See id.* ("It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his [or her] conduct was unlawful in the situation he [or she] confronted.") (internal quotation marks omitted). Officers Madrid and Williamson are entitled to qualified immunity.

Ms. Torres argues that the Supreme Court's decision in *California v. Hodari D.*, 499 U.S. 621 (1991), clearly established that Ms. Torres was seized when she was shot, and that therefore Officers Madrid and Torres are not entitled to qualified immunity. *See* Doc. 122 at 21. But the Supreme Court explicitly did not decide this issue in *Torres*. *See Torres*, 141 S. Ct. at 995. The Supreme Court explained that *Hodari D.* had articulated two principles: that "common law arrests are Fourth Amendment seizures," and that "the common law considered the application of force to the body of a person with intent to restrain to be an arrest, no matter whether the arrestee escaped." *Id.* But the Court explicitly stated that it would "not decide whether *Hodari D.*, which principally concerned a show of authority [not a show of force], controls the outcome of this case as a matter of *stare decisis*, because we independently reach the same conclusions." *Id.* Thus, *Hodari D.* did not clearly establish that Officers Madrid and Williamson seized Ms. Torres in 2014 when they shot her but did not stop her.

Ms. Torres further argues that the Supreme Court in "*Torres* recognized that the cases and commentary 'speak with virtual unanimity' on the question of seizure by physical force with intent to detain." Doc. 122 at 21 (quoting *Torres*, 141 S. Ct. at 996). Ms. Torres, however, has quoted the Supreme Court out of context. In *Torres*, the Supreme Court explained that although the seizure of property always has meant "taking possession," the seizure of a person "plainly refers to an arrest." *Torres*, 141 S. Ct. at 995–96. The Court then reviewed old British and early American common law to determine what constituted an arrest around the time that the Fourth

Amendment was adopted and made applicable to the states. *Id.* at 996–97. The Court determined that there was "virtual unanimity," *id.* at 996, among these historical records (dating from 1605 to 1904) that "an arrest required only the application of force—not control or custody—through the framing of the Fourteenth Amendment, which incorporated the protections of the Fourth Amendment against the States," *id.* at 997. The Court acknowledged, however, that it was "aware of no common law authority addressing an arrest under such circumstances [as those that exist here], or indeed any case involving an application of force from a distance," *id.* at 997, but it saw no reason that these circumstances should alter the analysis, *id.* at 997–98. Thus, although the Supreme Court ultimately held that Officers Madrid and Williamson arrested, or seized, Ms. Torres at "the instant that the bullets struck her," *id.* at 999, it was not clearly established in 2014 that they had done so. *See Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) ("for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate") (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

Ms. Torres's final argument as to whether the contours of the constitutional right violated in this case were clearly established in 2014 does not address the precise argument that defendants are making. She argues that "[i]t was clearly established that shooting an unarmed civilian in the back where there was no danger to the Defendant officers was clearly established in the 10th Circuit on July 15th, 2014." Doc. 122 at 21. First, it is undisputed that Ms. Torres was armed with her vehicle, and any case that does not involve a plaintiff in a moving vehicle is simply inapplicable. Second, and more to the point, this argument does not address whether Officers Madrid and Williamson would have understood in 2014, under then-existing Tenth Circuit and Supreme Court precedent, that they had arrested, or seized, Ms. Torres at the moment that their bullets hit her. Ms. Torres essentially is arguing that the officers' use of deadly force

under these circumstances was unreasonable, an issue that is hotly contested but which the Court does not address.

### C.  The *Heck* Doctrine and its Application to this Case

In *Heck*, the Supreme Court held that a plaintiff cannot bring a § 1983 civil rights claim based on actions whose unlawfulness would render an existing criminal conviction invalid.  512 U.S. at 486–87.  If, on the other hand, a court determines that a plaintiff's civil rights claim, even if successful, would not necessarily demonstrate the invalidity of a criminal conviction, the action may proceed absent some other bar to the suit.  *Id.* at 487.

Here, Ms. Torres originally was charged with two counts of aggravated assault with a deadly weapon upon a peace officer, but she ultimately was convicted of the lesser included offenses of aggravated fleeing from a law enforcement officer (with respect to Officer Williamson) and assault upon a peace officer (with respect to Officer Madrid).  An excessive force claim against these two officers is not necessarily inconsistent with Ms. Torres's convictions if, for example, the officers used too much force to respond or the officers used force after the need for force disappeared.  *Havens v. Johnson*, 783 F.3d 776, 782 (10th Cir. 2015).  To determine the effect of *Heck* on Ms. Torres's excessive force claims, the Court must compare Ms. Torres's allegations and claims to the offenses she committed.  *Id.*  Ms. Torres's excessive-force claims may be barred in their entirety if the theory of her claims is inconsistent with her prior convictions.  *Id.* (citing *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656 (5th Cir. 2007)).

In her complaint, Ms. Torres alleges that Officers Williamson and Madrid "were in 'tactical vests' and dark clothing[,] making it impossible for [her] to identify" them as police officers.  Doc. 1 ¶ 7.  She also alleges that the officers attempted to open her locked car doors

without her consent or permission, and that she thought it was an attempted carjacking, so she drove away.  *Id.* ¶ 8.  She further alleges that she had no weapons, did not make any gestures suggesting she was armed, and did not take out anything that looked like a weapon.  *Id.* ¶ 9. Finally, she alleges that both officers were beside her vehicle, not in front of it.  *Id.*  In other words, Ms. Torres claims that she did nothing wrong and did not endanger anyone in any way.

By contrast, Ms. Torres was convicted of aggravated fleeing a law enforcement officer, namely, Officer Williamson,[5] in violation of N.M. STAT. ANN. § 30-22-1.1.  *See* Doc. 112-7. Ms. Torres's conviction under this statute established that she "willfully and carelessly dr[ove] [her] vehicle in a manner *that endanger[ed] the life of another person* after being given a visual or audible signal to stop . . . by a uniformed law enforcement officer [Officer Williamson]. . . ." N.M. STAT. ANN. § 30-22-1.1(A) (emphasis added).  Ms. Torres also was convicted of assault upon a peace officer, namely, Officer Madrid,[6] in violation of N.M. STAT. ANN. § 30-22.21.  *See* Doc. 112-7.  Ms. Torres's assault conviction established that Ms. Torres either "attempted to commit a battery upon the person of [Officer Madrid] while [s]he [was] in the lawful discharge of [her] duties," or that Ms. Torres committed "any unlawful act, threat or menacing conduct which cause[d] Officer Madrid[,] while [ ] in the lawful discharge of [her] duties[,] to reasonably believe that [s]he [was] in danger of receiving an immediate battery."  N.M. STAT. ANN. § 30-22-21(A).

In short, the theory of Ms. Torres's excessive force claims is at odds with her convictions for aggravated fleeing from a law enforcement officer and assault on a peace officer.  Ms.

---

[5] This conviction is a lesser included offense of Count 1 of the indictment, which names Richard Williamson as the victim.  *See* Doc. 112-6 at 1.

[6] This conviction is a lesser included offense of Count 2 of the indictment, which names Janice Madrid as the victim.  *See* Doc. 112-6 at 1.

Torres's aggravated fleeing conviction establishes that she drove her vehicle in a manner that endangered the life of another person.  At the point that Ms. Torres did that, both Officer Madrid and Officer Williamson were entitled to use deadly force to try to stop her.  *See Sevier v. City of Lawrence, Kan.*, 60 F.3d 695, 699 (10th Cir. 1995) (deadly force is justified if a reasonable officer would have probable cause to believe that there was a threat of serious physical harm to themselves or others).  And although in her complaint Ms. Torres alleges she was unarmed, *see* Doc. 1 ¶ 9, her convictions and the undisputed facts of this case establish that Ms. Torres's "weapon" was her car:  she drove her car in a manner that endangered the life of another person, and she either attempted to hit Officer Madrid with her vehicle, or she caused Officer Madrid to reasonably believe that Ms. Torres was going to hit her with her vehicle.  Again, under any of these scenarios, both officers were justified in using deadly force.  *See Sevier*, 60 F.3d at 699.  Ms. Torres's excessive force claims are premised on the theory that she was simply sitting in her car minding her own business when unknown people—who turned out to be police officers—attempted to open her car door and frightened her into driving away, and that she did not endanger either officer when she did so.  As was true in *Havens*, 783 F.3d at 783–84, Ms. Torres does not allege that defendants used excessive force against her in response to her aggravated fleeing from Officer Williamson and assault on Officer Madrid.  She claims instead that she was completely innocent and did nothing wrong.  This version of events simply could not sustain the elements of her convictions.  The *Heck* doctrine therefore bars Ms. Torres's excessive force claims.

This case is in contrast to *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1125–27 (10th Cir. 1999), in which the Tenth Circuit held that the plaintiff's excessive force claim was not barred by the plaintiff's prior conviction for resisting arrest.  In *Martinez*, the court held that

plaintiff's conviction for resisting arrest could coexist with a claim that the officers used more force than was necessary to subdue him and effect his arrest. *See id.*  Nevertheless, the court held that plaintiff's allegations that the officers had no probable cause to arrest him and that he did not actively resist arrest must be stricken from his complaint because those claims were inconsistent with his prior conviction. *Id.* at 1127.  Here, Ms. Torres's prior convictions necessarily establish that Ms. Torres drove away from the officers in a manner that endangered the life of at least one other person, and that she either attempted to hit Officer Madrid with her vehicle, or that Officer Madrid reasonably believed that the vehicle was going to hit her.  The officers fired their weapons at the same time and immediately upon Ms. Torres driving away; these shots were the only force used against Ms. Madrid.  *See* Doc. 112-8 (Exh. H, 1:12–1:30 (Officer Madrid's audio recording of incident); Exh. I, 1:01–1:22 (Officer Williamson's audio recording of incident)); *see also* Doc. 1 ¶ 10.  Both officers stopped shooting within seconds. *See* Doc. 112-8 (Exh. H, 1:12–1:30; Exh. I, 1:01–1:22)*.*  Further, Ms. Torres did not stop and was not subdued.  The force, therefore, was not more than what was necessary to stop her.  Ms. Torres's claims of excessive force are fundamentally inconsistent with her convictions and are barred under *Heck*.  *C.f. Hooks v. Atoki*, 509 F.3d 1278, 1200–03 (10th Cir. 2020) (applying *Heck* to bar some, but not all, of plaintiff's excessive force claims where plaintiff alleged six distinct uses of force); *Beets v. County of Los Angeles*, 669 F.3d 1038, 1042 (9th Cir. 2012) ("an allegation of excessive force by a police officer would not be barred by *Heck* if it were distinct temporally or spatially from the factual basis for the person's conviction").

Ms. Torres's response to the officers' motion for summary judgment on this issue fundamentally misapprehends the nature of the *Heck* doctrine.  She argues that "[t]he no contest plea to assault did not determine whether shooting at Ms. Torres from the side and back when

Defendants were in absolutely no danger of being hit was a reasonable use of force," and that the "no contest plea to aggravated fleeing does not answer or address the reasonableness of the use of force by Defendants." Doc. 122 at 23. She also argues that this Court previously noted that "it is not evident from the plea agreement that either Officer . . . shot at her in reaction to her aggravated fleeing." *Id.* at 24 (quoting Doc. 42 at 8). In making these arguments, Ms. Torres focuses on collateral estoppel, not the *Heck* doctrine. *See id.* at 23–24.

First, it is of no consequence that Ms. Torres's convictions arose from a no contest plea. As the Tenth Circuit explained in *Havens*, "the *Heck* doctrine derives from the existence of a valid conviction, not the mechanism by which the conviction was obtained (such as admissions by the defendant), so it is irrelevant that [the plaintiff] entered an *Alford* plea." *Havens*, 783 F.3d at 784; *see also Hooks*, 983 F.3d at 1201 (applying *Heck* to bar some of plaintiff's excessive force claims based on plaintiff's "no contest plea to two counts of assault and battery of a police officer").

Second, there is no requirement under *Heck* that the prior criminal case address and determine whether the officers used reasonable force in reaction to the situation that confronted them as there might be for collateral estoppel. Collateral estoppel is used to "bar the relitigation of ultimate facts or issues actually and necessarily decided in the prior suit by a valid and final judgment," and to prevent repeated litigation of the same issues under "the guise of different causes of action." *Reeves v. Wimberly*, 1988-NMCA-038, ¶ 6, 107 N.M. 231, 233, 755 P.2d 75, 77. The preclusive effect in federal court of a state judgment is governed by the state's preclusion rules.[7] *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*, 497 F.3d

---

[7] Ms. Torres cites to *Haring v. Prosise*, 462 U.S. 306 (1983) in response to the defendants' *Heck* argument. Doc. 122 at 23. In *Haring*, the Supreme Court held that a plaintiff's guilty plea in state court did not preclude his § 1983 claim in federal court under the rules of collateral estoppel

1096, 1100 (10th Cir. 2007).  In New Mexico, there are four elements the moving party must establish to demonstrate that the doctrine applies: "(1) the parties are the same or in privity with the parties in the original action; (2) the subject matter or cause of action in the two suits are different; (3) the ultimate facts or issues were actually litigated; and (4) the issue was necessarily determined."  *Reeves*, 1988-NMCA-038, ¶ 8, 107 N.M. at 233, 755 P.2d at 77.  New Mexico courts, however, have "eliminated the traditional rule that the parties must be the same or in privity if the doctrine of collateral estoppel is to apply" in civil cases.  *Id.* ¶ 12, 107 N.M. at 234, 755 P.2d at 78.  In other words, the test for determining whether collateral estoppel applies is quite stringent.  In contrast, under the *Heck* doctrine, the defendants need only show that a judgment in favor of Ms. Torres on her excessive force claims would necessarily imply that her state convictions for aggravated fleeing and assault on a peace officer were invalid.  The defendants explicitly do not rely on collateral estoppel.  *See* Doc. 123 at 12 (noting that defendants have not raised collateral estoppel as a defense).  As discussed above, because the theory of Ms. Torres's excessive force claims is wholly inconsistent with her prior convictions, the *Heck* doctrine bars her claims.

Third and finally, this Court's earlier determination that "it is not evident from the plea agreement that either Officer . . . shot at her in reaction to her aggravated fleeing," *see* Doc. 122 at 24 (quoting Doc. 42 at 8), is irrelevant to the issue at hand.  As explained in its earlier order, the Court was deciding a motion to dismiss and could consider only Ms. Torres's complaint and, potentially, the plea agreement that was attached to the motion.  Doc. 42 at 7.  Now, in considering the officers' motion for summary judgment, the Court may consider all the

---

as applied by the state of Virginia.  *See Haring*, 462 U.S. at 312–17.  *Haring* is simply inapplicable to whether the *Heck* doctrine—not collateral estoppel—bars Ms. Torres's claims here.

undisputed evidence in the case.  FED. R. CIV. P. 56.  Based on that evidence, which includes numerous documents from Ms. Torres's criminal case, I find that Ms. Torres's claims of excessive force are incompatible with her convictions for aggravated fleeing and assault on a peace officer and are barred under *Heck.*

## IV.    Conclusion

For the foregoing reasons, the Court GRANTS Defendants' Renewed Motion for Summary Judgment on the Basis of Qualified Immunity and Other Grounds (Doc. 112).  Officers Madrid and Williamson are entitled to qualified immunity on Counts I and III because the contours of the constitutional right violated were not clearly established in July 2014, when the events occurred.  Alternatively, Ms. Torres's claims against the officers in Counts I and III are barred by the *Heck* doctrine.  Because Counts II and IV are derivative conspiracy claims, they fail as a matter of law under either theory.  *See Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1449 (10th Cir. 1990) ("to recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient").  The Court therefore dismisses this case with prejudice.

IT IS SO ORDERED.

Laura Fashing
United States Magistrate Judge
Presiding by Consent