**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ROXANNE TORRES,

    Plaintiff,

vs.                                                    Cause No. 16-CV-01163 LF/KK

JANICE MADRID, et al.,

    Defendants.

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE [DOC. NO. 155]
TO DEFENDANTS' SECOND RENEWED MOTION
FOR SUMMARY JUDGMENT [DOC. NO. 150]**

Given the repetitiveness and overlap among Plaintiff's assertions of "fact" in her *Response* brief [Doc. 155], Defendants hereby respond both in support of their own *Undisputed Material Facts* ("UMFs") and in opposition to Plaintiff's "*Additional Material Facts*" ("AMFs") as follows:

UMF 1: Plaintiff admitted in sworn testimony that, on the date of the incident, she was addicted and badly strung out; she admitted that she had "been up for days," was "crashing," and going through withdrawals. *See* **Doc. 150-1, at 102:16-19, 103:16-17, 103:23-24, 104:7-9**.

UMFs 2, 19, 21-27; AMFs M-S, X: Plaintiff's purported "detailed account"—drawn largely from various sections of her deposition—does not change her sworn testimony that she had only a vague recollection.  Regardless, Defendants have taken Plaintiff's description of events from her own deposition and her own point of view. Again, Plaintiff admitted under oath that one person (Williamson) was standing at her driver's side window and another person (Madrid) was standing "catty-corner," "at the front tire;" Plaintiff further admitted that she "freak[ed] out," put

1

the car in drive, and stepped on the gas to flee the scene. **_See_ Doc. 150-1, at 66:16 to 67:10, 74:16-24; _see also_ Doc. 155-1, at 71:17-21, 86:16-18; and Doc. 155-1, p.19 (Plaintiff's Incident Diagram)**. Critically, Plaintiff admitted that she drove forward *before* shots were fired. **_See_ Doc. 155-1, at 83:6-18.** Finally, Plaintiff's suggestion that the Officers "recklessly put themselves in jeopardy," (**_See_ Doc. 155, p.8**), is an improper and unsubstantiated legal conclusion that cannot be offered by her purported expert witness. _See Okland Oil Co. v. Conoco Inc._, 144 F.3d 1308, 1328 (10th Cir. 1998) (citing *A.E. v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991)).

UMFs 5, 6: Plaintiff disputes that the Harper Apartments were housing projects and the so-called "characterization" that she was at Sandia Casino all night. However, this is exactly what she testified to under oath. **_See_ Doc. 150-1, at 52:13-15, 61:4-6, 62:7-16, 62:24 to 63:7.**

UMFs 9, 10, 11, 12, 29: Kayenta Jackson had a felony warrant out for her arrest; and Jackson was part of a larger racketeering ring which included persons suspected of drug trafficking, murder, and other violent crimes. Forgery is a felony crime. Moreover, Jackson's surrender occurred *after* the shooting incident at issue in this case; Plaintiff cannot point to this later-known fact to overcome qualified immunity. _See Hernandez v. Mesa_, 137 S.Ct. 2003, 2007 (2017) (per curiam). Plaintiff's expert's assertions that "[a] reasonable officer would not mistake Ms. Torres for Ms. Jackson" and that "[t]here was sufficient time for a reasonably trained officer to make appropriate force decisions," (**_See_ Doc. 155, pp.4, 6**), are more vague and improper legal conclusions.

UMFs 13-20; AMFs B-L: Plaintiff does not dispute that, when officers drove by the apartments, she and another person were standing outside Jackson's apartment and Jackson's door was ajar. Nonetheless, Plaintiff repeatedly claims that the officers were dressed mostly in black.

2

However, as previously shown, the officers' clothing clearly marked and identified them as State Police officers. <u>See</u> *Torres v. Madrid*, 60 F.4th 596, 598 (10th Cir. 2023) ("Defendants were dressed in dark clothing and tactical vests that identified them as police"). Given the verifiable markings on their clothing, it is immaterial that the officers' vehicles were "unmarked" or that the officers did not specifically shout "State Police" to audibly identify themselves. Regardless, the engine in Plaintiff's car was running, (<u>See</u> *Torres*, 60 F.4th at 598), and Plaintiff testified that she could not hear Defendants, so an oral notification to Plaintiff would have been ineffectual. Under her own facts, it could not have been clear to Madrid that Jackson was not the driver; it was only clear *after the fact* that Plaintiff was not an African American woman. That said, the Officers did not shoot because they thought Plaintiff was Jackson — they shot because Plaintiff drove at them (particularly at Madrid, who as Plaintiff admits, was at the front of the car as discussed above). Plaintiff's repeated contentions about what a "reasonable officer" would do, or that her own actions were "reasonable," are improper, inadmissible legal conclusions that cannot be stated by her purported expert witness. <u>See</u> *Okland Oil Co.*, *supra*, 144 F.3d at 1328.

<u>UMFs 9, 13, 14</u>:  These facts are judicial admissions drawn from Plaintiff's own Complaint.

<u>UMFs 28-30; AMFs R-U</u>:  It is undisputed that Plaintiff drove away from the scene, stole another person's vehicle, and did not realize that she was shot until she arrived in Grants. Moreover, as noted by the Tenth Circuit, "[o]nly about 14 seconds passed from the time Defendants first issued commands to Ms. Torres to the moment the last bullet was fired. Defendants fired their 15 shots over seven seconds." *Torres*, *supra*, 60 F.4th at 598.

UMF 30; AMF K: Plaintiff's subjective belief that she thought she was being "carjacked" is irrelevant to the fact that there was a warrant out for her arrest, and her criminal convictions legally preclude her from claiming that she did not realize the Defendants were police officers.

UMFs 34-36: The criminal court documents **(Defendants' Exhibits E, F, and G)** speak for themselves and are undisputed; Plaintiff pled no contest to these lesser-included offenses which prohibits her from attacking them in this litigation.

AMF A: Defendant Madrid's prior work experience has no bearing in this case. Plaintiff's attempt to weigh credibility is expressly forbidden in summary judgment proceedings. *See Tapia v. City of Albuquerque*, 10 F.Supp.3d 1207, 1250 (D.N.M. 2014).

AMF V: Plaintiff fails to show that the Officers were *required* to activate any video recorder(s).

AMFs W, X, Y: A police officer's alleged failure to conform with particular police tactics and procedures or departmental regulations and policies does not create liability under 42 U.S.C. § 1983. *See*, *e.g.*, *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005); *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001). Again, Plaintiff's expert cannot state legal conclusions as to whether the Officers' actions were reasonable or unreasonable.

## ARGUMENT

In the original appeal of this matter, the Supreme Court "le[ft] open on remand any questions regarding the reasonableness of the seizure…and the officers' entitlement to qualified immunity." *Torres v. Madrid*, 141 S.Ct. 989, 1003 (2021). In 2023, the Tenth Circuit again remanded this case to this Court "for consideration of whether Defendants are entitled to qualified immunity because their use of force was reasonable ***or*** there was not clearly established law that it was

4

unreasonable" (emphasis supplied). *Torres*, *supra*, 60 F.4th at 604. This Court has the discretion to decide the order in which these two issues should be addressed, and whether to address one, the other, or both issues. *See Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023).

Contrary to Plaintiff's assertions, (*See* **Doc. 155, p.17 at n.3**), qualified immunity remains the law of the land, as the Supreme Court's recent opinions have shown. *See*, *e.g.*, *City of Tahlequah v. Bond*, 142 S.Ct. 9, 12 (2021) (per curiam) (police officers who killed an intoxicated suspect were entitled to qualified immunity because the officers did not violate any clearly established law; prior decisions relied upon by the Tenth Circuit—including *Allen v. Muskogee* and *Sevier v. Lawrence*, discussed *infra*—did not "come[] close to establishing that the officers' conduct was unlawful"); *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4, 8-9 (2021) (per curiam) (reversing denial of qualified immunity to a police officer who put his knee in the plaintiff's back while handcuffing plaintiff; Ninth Circuit's single prior decision cited in its opinion was inapposite); *see also Lewis v. City of Edmond*, 48 F.4th 1193, 1199-1200 (10th Cir. 2022); *Hall v. Brown*, 2023 WL 7014046, n.6 (10th Cir. Oct. 25, 2023) (10th Cir. Oct. 25, 2023) (unpublished).

When reviewing a law enforcement officer's entitlement to qualified immunity, the Court cannot "deny summary judgment by merely finding that genuine issues of fact exist; those issues must also be material—that is, affecting the outcome of the suit under the applicable law." *Watson v. Boyd*, 2 F.4th 1106, 1110 (8th Cir. 2021). The hurdle for overcoming qualified immunity "is even higher when the plaintiff alleges a Fourth Amendment violation." *See Henderson v. Harris Cnty.*, 51 F.4th 125, 132 (5th Cir. 2022); *see also Alcala v. Ortega*, No. 22-CV-755, Am. Mem. Op. and Order, p.10 (D.N.M. Nov. 2, 2023) (slip op.). Careful comparisons between prior cases and the instant case are especially necessary in excessive force cases because highly variable and

fast-moving circumstances inform whether the force was excessive. *Omeish v. Kincaid*, No. 22-1826, p.18 (4th Cir. Nov. 15, 2023) (unpublished) (citing *Bond*, *supra*, 142 S.Ct. at 12-13).

> A. <u>Plaintiff has Failed to Show that the Officers' Use of Force was Not Reasonable in Light of Clearly Established Law, Thus the Officers are Entitled to Qualified Immunity</u>

A challenged use of force is evaluated for objective reasonableness based upon the information the officers had when the conduct occurred. *Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017); *see also Hemry*, 62 F.4th at 1257-58. The Fourth Amendment permits an officer to use deadly force if there is probable cause to believe that there is a threat of serious physical harm to the officer or to others. *Estate of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (internal quotation marks omitted). An officer "has a right to take reasonable steps to protect himself ... regardless of whether probable cause to arrest exists." <u>See Thomas v. Durastanti</u>, 607 F.3d 655, 668 (10th Cir. 2010); <u>see also</u> Redd v. City of Okla. City, 2021 WL 3909982, *10 (10th Cir. Sep. 1, 2021) (unpublished). The factors cited by the Plaintiff in her *Response*, (**<u>See</u> Doc. 155, pp.9-10**), are only aids in making the ultimate determination, which is whether, from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force. *Tenorio v. Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015). Here, Plaintiff has failed to show that the Officers' use of force was unreasonable as a matter of law, and thus summary judgment should be granted.

> 1. *The Shooting Was Reasonable Based Upon Application of the <u>Graham</u> Factors*

As Plaintiff admits, the first *Graham v. Connor* factor is the severity of the crime at issue. In her *Response*, Plaintiff attempts to minimize the crimes that the Officers were investigating as "financial" or "white collar" crimes and not crimes of violence. (**Doc. 155, pp.3, 15**). However, it is undisputed that the Officers were investigating felony crimes on July 15, 2014. The Tenth Circuit's "binding precedent indicates the first *Graham* factor weighs against the plaintiff when

the crime at issue is a felony, irrespective of whether that felony is violent or nonviolent." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1170 (10th Cir. 2021) (collecting cases); see also *Cantrell v. Johnson*, 2017 WL 5503716, *6 (E.D. Okla. Nov. 16, 2017) (unpublished).

Additionally, resistance need not be physical — the third *Graham* factor can weigh in favor of a use of force when, *inter alia*, an individual refuses to obey an officer's lawful orders. See *Anderson v. DelCore*, __ F.4th __, 2023 WL 5313974, *7 (10th Cir. Aug. 18, 2023) (slip op.). Otherwise, an officer's power to give lawful orders "would be hollow." *Helvie v. Jenkins*, 66 F.4th 1227, 1238 (10th Cir. 2023); see also *Hodge v. Bartram*, 2023 WL 1462746, *1, *4 (10th Cir. Feb. 2, 2023) (unpublished) (reversing denial of qualified immunity where plaintiff claimed not to have heard officer's orders and then characterized officer's order as "unlawful"). When an officer lawfully uses force but an individual resists that initial use of force, it is obvious that the officer may use a greater degree of force than would have initially been appropriate to subdue the individual, obtain peace, and ensure that the officers had control over the situation. *Anderson*, 2023 WL 5313974 at *9. It, therefore, follows that the Officers were entitled to respond to Plaintiff's forceful resistance/flight with reasonable measures to subdue her and reassert control over the situation. *Id.* at *10. Ultimately, the inquiry here is not whether Plaintiff *actually* intended to comply with the Officers' commands or actually posed any threat; rather the question is whether the Officers' belief that she presented a threat was reasonable. *Hall v. Brown*, *supra*, 2023 WL 7014046 at *4; see also *Baca v. Cosper*, 2023 WL 5725427 (D.N.M. Sep. 5, 2023) (slip op.) (considering, *inter alia*, decedent's manifest intentions and close proximity to officer, officer's use of lethal force was not unreasonable and did not violate clearly established law). Considering the

facts available to the Officers on July 15, 2014, their belief that Plaintiff was non-complaint and posed a threat was reasonable, justifying their use of force to gain control of the situation.

2. *Plaintiff has Failed to Meet her Burden of Showing Clearly Established Law*

Even if this Court were to conclude that the Officers used an unreasonable amount of force against Plaintiff (though it should not, for the reasons cited above and in the Officers' Motion), any such constitutional violation was not clearly established at the time the matter at issue here occurred, in July of 2014. <u>See *Helvie*</u>, *supra*, 66 F.4th at 1244. Plaintiff broadly cites both *Graham* and *Tennessee v. Garner* in support of her Fourth Amendment claims. <u>**See generally**</u> **Doc. 155, pp.10-17**. However, *Garner* "lay[s] out excessive-force principles at only a general level." *White v. Pauly*, 137 S.Ct. 548, 552 (2017); <u>see also</u> *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). For excessive force claims, cases like *Garner* "do not by themselves create clearly established law outside 'an obvious case.'" *White*, 137 S.Ct. at 552 (citation omitted); *see also Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018) (same). As noted in *Estate of Smart v. City of Wichita*, 951 F.3d 1161, 1174 (10th Cir. 2020), "the Supreme Court has repeatedly chastised courts for relying in such a manner on its broad statement of the law in *Garner*." Even *Graham* is itself cast at a high level of generality and therefore cannot provide clear notice in most cases. <u>See</u>, *e.g.*, *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004); *Wilson v. Prince George's Cnty.*, 893 F.3d 213, 224 (4th Cir. 2018). It is thus inappropriate for Plaintiff to rely on broad principles from these two cases as "clearly established" law. Elsewhere in her *Response*, Plaintiff purports to rely on post-dated opinions in support of her Fourth Amendment claim. However, none of these cases could clearly establish the law as of July 15, 2014. <u>See *Knopf v. Williams*</u>, 884 F.3d 939, 947 (10th Cir. 2018).

Each of Plaintiff's cited published cases is distinguishable or does not support her. Plaintiff's repeated reliance upon *Cordova v. Aragon*, 569 F.3d 1183 (10th Cir. 2009) is particularly misplaced. In that case, Officer Aragon opened fire upon a truck driving the wrong way down the highway. *Id*. at 1186. Importantly, the Tenth Circuit did not address the issue of whether Aragon or any bystanders were in danger; the only issue before it was *whether there was a potential risk to hypothetical unknown third parties*. *Id*. at 1187-88 (emphasis supplied). This is a fundamental difference between the *Cordova* opinion and the case at hand; Here, Defendants were directly in danger. *See Fancher v. Barrientos*, 2012 WL 12838429 (D.N.M. June 13, 2012), *aff'd Fancher v. Barrientos*, 723 F.3d 1191 (10th Cir. 2013). In *Fancher*, this Court concluded that *Cordova* is inapplicable when the issue is whether officers and nearby citizens are in danger, versus a general danger posed by reckless driving. *Fancher*, 2012 WL 12838429, *12-13; *see also Stevenson v. City of Albuquerque*, 446 F.Supp.3d 806, 869-70 (D.N.M. 2020). The six shots in *Fancher* that were "clearly unlawful" were those taken after there was no obvious danger. As the Tenth Circuit's decision in *Reavis v. Frost*, 967 F.3d 978, 985 (10th Cir. 2020), relied heavily on its prior opinion in *Cordova*, neither *Cordova* nor *Reavis* aid the Plaintiff here: Plaintiff undeniably placed real persons in danger, not merely hypothetical ones, and she at all relevant times posed a serious threat of harm — so serious that Plaintiff was convicted of, *inter alia*, Assault Upon a Peace Officer.

In *Allen v. Muskogee*, 119 F.3d 837, 844 (10th Cir. 1997), also cited by Plaintiff, the Tenth Circuit held that officers could be found liable under the Fourth Amendment where they failed to follow the "fundamental principle[] of maintaining a covered position and trying to communicate with armed emotionally upset persons rather than approaching and physically attempting to disarm them." The facts of *Allen* are too dissimilar to demonstrate a violation of clearly established law.

9

*See City of Tahlequah v. Bond*, *supra*, 142 S.Ct. at 12 ("We cannot conclude that *Allen* 'clearly established' that [defendants'] conduct was reckless or that their ultimate use of force was unlawful"); *Estate of Valverde v. Dodge*, 967 F.3d 1049, 1067-68 (10th Cir. 2020); *Pauly v. White*, 874 F.3d 1197, 1223 (10th Cir. 2017); *Choate v. Huff*, 773 F. App'x 484, 489 (10th Cir. July 18, 2019); *Heredia v. City of Las Cruces*, 2021 WL 411444, *17 (D.N.M. Feb. 5, 2021) (unpublished).

Plaintiff's reliance upon *Sevier v. Lawrence*, 60 F.3d 695 (10th Cir. 1995), and *Estate of Ceballos v. Husk*, 919 F.3d 1204 (10th Cir. 2019), is equally misplaced. In *Sevier*, the Tenth Circuit merely noted in *dicta* that deliberate or reckless pre-seizure conduct can render a later use of force excessive before dismissing the appeal for lack of jurisdiction. *See City of Tahlequah v. Bond*, *supra*, 142 S.Ct. at 12 (citing *Sevier*, 60 F.3d at 700–01). "To state the obvious, a decision where the court did not even have jurisdiction cannot clearly establish substantive constitutional law." *Bond*, 142 S.Ct. at 12. Regardless, that formulation of the rule is much too general to bear on whether the Officers' particular conduct here violated the Fourth Amendment. *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)); *see also Lennen v. City of Casper*, No. 21-8040 (10th Cir. Mar. 2, 2022) (unpublished) (Rossman, J., concurring, pp.6-7). *Estate of Ceballos v. Husk*, decided ***after*** the shooting at issue in this case, is of no use in the clearly established inquiry. *See Bond*, 142 S.Ct. at 12 (citing *Brosseau v. Haugen*, *supra*, 543 U.S. at 200, n.4). Similarly, *Simpson v. Little*, 16 F.4th 1353 (10th Cir. 2021), *Soza v. Demsich*, 13 F.4th 1094, 1100 n.3 (10th Cir. 2021), and the out-of-circuit decision in *Jefferson v. Lias*, 21 F.4th 74, 82-83 (3d Cir. 2021) (***See* Doc. 155, pp.22-23**) were decided after the events at issue here, and under *Bond* and *Brosseau*, cannot be considered as clearly-established law extant in 2014. *See also Knopf*, *supra*, 884 F.3d at 947.

Moreover, Plaintiff cannot rely on the foregoing cases to suggest that the Officers "created" the danger. *See*, *e.g.*, *Clark v. Colbert*, 2017 WL 3049523, *5-6 (E.D. Okla. July 18, 2017), *affirmed*, 895 F.3d 1258 (10th Cir. 2018). "The conduct of the officers before a suspect threatens force is relevant only if it is 'immediately connected' to the threat of force." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1320 (10th Cir. 2009); *see also Gonzales v. Adson*, 2019 WL 1795937, *7-8 & n.7 (N.D. Okla. Apr. 24, 2019). Even the cases cited by Plaintiff do not "suggest that a court can or must evaluate every decision or move made by officers from the moment they arrived on scene simply because it may have a causal connection to the ultimate use of deadly force." *Arnold v. City of Olathe*, 550 F.Supp.3d 969, 986 (D. Kan. 2021) (citing *Bella v. Chamberlain*, 24 F.3d 1251, 1256 (10th Cir. 1994)). The Tenth Circuit has stated that the Fourth Amendment prohibits unreasonable seizures, and not "unreasonable or ill-advised conduct in general." *Bella*, 24 F.3d at 1256.

In *Estate of Ronquillo v. City and Cnty. of Denver*, 720 F. App'x 434, 436 (10th Cir. 2017) (unpublished), officers approached a suspect in his parked vehicle and blocked him with their cars. The plaintiff alleged that officers tried to forcibly remove the suspect from the vehicle, and then five seconds later, the suspect tried to escape, first by driving backwards and then "[s]everal seconds later" by driving forward directly toward some officers. *Ronquillo*, 720 F. App'x at 436-37. At that point, officers shot and killed the suspect. *Id.* at 437. The Tenth Circuit rejected the argument that the initial use of force in trying to remove the suspect from the car created the need for the subsequent deadly force, finding that "the officers' initial attempts to extract [the suspect] were too attenuated to support that theory of causation," because the suspect had time to back the car up, stop, put the car in drive, and then drive forward. *Id.* at 439. In other words, actions just

11

several seconds removed, but during which the suspect took offensive actions against the officers, were deemed too attenuated. *Id.* at 439-40; see also *Arnold*, 550 F.Supp.3d at 984. In the present case, Plaintiff's *Response* posits the theory that Defendants are to blame for setting in motion the events of the incident—however, Plaintiff fails to produce evidence (apart from her own expert's inadmissible legal conclusions) showing that Defendants acted recklessly or deliberately in approaching her vehicle. In sum, Plaintiff has failed to meet her burden of showing that Defendants violated her clearly established Fourth Amendment rights.

B.  The Circuit's Decision Regarding *Heck v. Humphrey* Does Not Negate Summary Judgment

As the Tenth Circuit suggested in its February 17, 2023, the *Heck* Doctrine does not automatically preclude a claim for excessive force. Rather, in the present case, it is the judicial admissions that were made in plaintiff's plea and disposition agreement that help to establish that Defendants' use of force was objectively reasonable under the totality of the circumstances. *See Scott v. Harris*, 550 U.S. 372, 350 (2007) (the reasonableness of a seizure is assessed in light of the totality of the circumstances). Of course, Plaintiff may not make any arguments with respect to her excessive force claim that would negate the validity of her Section 30-22-1.1 and 30-22-21 convictions. *Cf. Melendez v. City of Las Cruces*, 2022 WL 3912565, *6 (D.N.M. Aug. 31, 2022) (unpublished); *contra: Surat v. Klamser*, 52 F.4th 1261 (10th Cir. 2022).

Once again, Plaintiff pleaded "no contest" to violating NMSA 1978, Sections 30-22-1.1 and 30-22-21. The crime of Aggravated Fleeing "consists of a person willfully and carelessly driving [a] vehicle in a manner *that endangers the life of another person* after being given a visual or audible signal to stop" by law enforcement. *State v. Vest*, 2021-NMSC-020, ¶ 1, 488 P.3d 626 (quoting NMSA 1978, § 30-22-1.1 (2003) (emphasis supplied)); see also *State v. Ortega*, 2023-

NMCA-032, ¶ 17, 528 P.3d 733. Assault on a Peace Officer includes "an attempt to commit a battery on a peace officer, or any unlawful act, threat, or menacing conduct which causes a peace officer to reasonably believe that he is in danger of receiving an immediate battery." *Seidel v. Crayton*, No. CV-15-925 MV/CG, Mem. Op. and Order, p.8 (D.N.M. Oct 19, 2017) (unpublished) (citing NMSA 1978, § 30-22-21). The threats reasonably perceived by the Officers, and Plaintiff's sudden flight in a manner that had the potential to endanger the life of either or both Officers, were both part of the totality of circumstances on July 15, 2014. The Officers acted reasonably and did not use excessive force under the totality of the circumstances. As such, the Officers are entitled to qualified immunity and summary judgment. *See Harrison v. N.J. State Police*, Civ. 2:18-CV-16358 (WJM), p.9 (D.N.J. Mar 02, 2023) (slip op.).

Respectfully submitted,

MARK D. JARMIE, LLC

*/s/ Mark D. Jarmie*
Mark D. Jarmie
*Counsel for Defendants*
514 Marble Avenue NW
Albuquerque, New Mexico  87102
(505) 243-6727
mjarmie@jarmielaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading was submitted to the Court's *Odyssey File and Serve System* for electronic filing and service upon all registered counsel of record, and that a copy of same was served upon counsel for the Plaintiff via electronic mail this **16th** day of **January 2024**.

*/s/ Mark D. Jarmie*
Mark D. Jarmie
MARK D. JARMIE, LLC
*Counsel for Defendants*